THE NORD DEUTSCHER LLOYD STEAMSHIP COMPANY,. PLAINTIFF IN ERROR, v. ANNA INGEBREGSTEN, AD-MINISTRATRIX, &c., DEFENDANT IN ERROR.

1. A master's duty to his servant requires of the former the exercise of reasonable care and skill in furnishing suitable machinery and appli-ances for carrying on the business in which he employs the servant,. and in keeping such machinery and appliances in repair, including the duty of making inspections and tests at proper intervals.

2. If the master selects an agent to perform this duty for him, and the· agent fails to exercise reasonable care and skill in its performance,. the master is responsible to his servants for the fault. · But, if the employer's duty to inspect or repair apparatus is incidental to his. duty to use the apparatus in a common employment with fellow-ser-vants, then the master is not responsible to the fellow-servants for the default of such employe.

3. In the absence of notice to the contrary, a servant is entitled to assume· that his master has exercised due care and skill in furnishing proper· appliances for the work and in keeping them safe.

On error to the Supreme Court.

For the plaintiff in error, *Samuel A. Besson.*

For the defendant in error, *Robert L. Lawrence.*

The opinion of the court was delivered by

DIXON, J.   In an action by an administratrix to recover· damages resulting from the death of her intestate, it appeared that the deceased was a stevedore in the employ of the defend-ant and was killed while unloading one of the defendant's steamships at the dock in Hoboken.   The circumstances of his death were as follows : The ship's cargo, consisting of bags of rice weighing about two hundred and fifty pounds each,. was hoisted out of the hold by means of a wire rope fifteen-sixteenths of an inch in diameter, called a "hanger," suspended from one of the ship's masts and having its lower end held over the hatch by another wire rope called an "outhaul;" the lower end of the hanger was formed into a loop by being· bent around an iron thimble and spliced upon itself with.

hemp lashing for a foot or two above the thimble; the thimble was shaped like a horse's collar inverted, except that the upper ends were not quite closed; into this thimble were hooked the lower end of the outhaul, and also the upper end of the vertical hoisting apparatus, at the lower end of which was a sling to hold the bags of rice; the work of the deceased was to place the bags in the sling and fasten the sling to the apparatus for hoisting, as several slings were in use, he would frequently be engaged in filling one sling beneath the hatchway while another was ascending; and while he was thus occupied the hanger broke at the open end of the thimble and the bags fell upon him, inflicting injuries from which he soon died.

At the close of the plaintiff's case the defendant moved for a nonsuit, on the ground that the testimony did not indicate any negligence of the defendant and did establish contributory negligence by the deceased, which motion was denied and an exception sealed.

The plaintiff's evidence tended to prove that the hanger, if in good order, would sustain a weight of about fifteen tons, and had on it when it broke less than one ton; that it had been in use two or three times a week for about seven years; that before the accident it was rusty, and at the point of fracture had been abraded by the ends of the thimble; that these defects were discoverable on removing the lashing by which the splice was made, and that the apparatus was supplied by the defendant and kept in charge of Gerhart Schau, its storekeeper, whose duty it was to look after all the gear used at the dock and see that it was in good order.

Upon this evidence we think it became a fair question for the jury whether the accident had not happened because of a defect in the hanger which reasonable inspection would have discovered, and reasonable prudence have remedied. Supposing the jury might decide that question in favor of the plaintiff, the question of law arises whether the defendant had performed its duty as employer, by delegating to its storekeeper, Schau, the duty of inspection and repair.

The master's duty to his servant requires of the former the exercise of reasonable care and skill in furnishing suitable machinery and appliances for carrying on the business in which he employs the servant, and in keeping such machinery and appliances in repair, including the duty of making inspections and tests at proper intervals. *Union Pacific Railroad Co.* v. *Daniels*, 152 *U. S.* 684. So far the authorities are at one. Almost as unanimous are they in the proposition that, if the master selects an agent to perform this duty for him, and the agent fails to exercise reasonable care and skill in its performance, the master is responsible for the fault. *Northern Pacific Railroad Co.* v. *Herbert*, 116 *U. S.* 642, and cases there cited; *Baily* v. *Rome, Watertown and Ogdensburg Railroad Co.*, 139 *N. Y.* 302; *Hankins* v. *New York, Lake Erie and Western Railroad Co.*, 37 *N. E. Rep.* 466; *Toy* v. *United States Cartridge Co.*, 159 *Mass.* 313.

Discrepancies, however, have arisen in the application of the latter rule, because of another rule firmly established, that the master is not responsible to his servant for the negligence of a fellow-servant engaged in a common employment. In determining whether an employe, through whose negligence defects in the machinery have failed of discovery or repair, is a representative of the master in the discharge of the master's duty to the servant, or is a fellow-servant of the latter engaged in a common employment, many incongruous decisions have been rendered.

On this topic a rational distinction would seem to be that when the employe's duty to inspect or repair the apparatus is incidental to his duty to use the apparatus in the common employment, then he is not entrusted with the master's duty to his fellow-servant, and the master is not responsible to his fellow-servant for his fault, but that if the master has cast a duty of inspection or repair upon an employe who is not engaged in using the apparatus in a common employment with his fellow-servant, then that employe in that duty represents the master, and the master is chargeable with his default. This distinction is noticeable in *McAndrews* v. *Burns*, 10

*Vroom* 117; *Smith* v. *Oxford Iron Co.*, 13 *Id.* 467; *Collyer* v. *Pennsylvania Railroad Co.*, 20 *Id.* 59; *Ross* v. *Walker*, 21 *Atl. Rep.* 157; *Moynihan* v. *The Hills Co.*, 146 *Mass.* 586; *Daley* v. *Boston and Albany Railroad Co.*, 147 *Id.* 101, and many other cases.

Applying this principle to the case in hand, it is manifest that Schau, the storekeeper, who was charged with the duty of seeing that the apparatus was in good condition before it was delivered to the stevedores for use, but was not himself to be engaged in using it, was in that service the representative of the defendant, and was not serving in a common employment with the deceased. As the evidence tended to show that he had not carefully performed this duty, and that the accident had thence resulted, the plaintiff could not be nonsuited for want of proof of negligence chargeable to the defendant.

That the case did not present such indubitable proof of negligence on the part of the deceased as to justify a nonsuit, is, I think, too clear for discussion.

The nonsuit was rightly refused.

The other exceptions relate to the charge and to the defendant's requests to charge.

These requests were that the court charge the jury that, if the accident was caused by want of sufficient examination of the hanger on the part of Schau, the plaintiff could not recover, and that the defendant's duty was discharged if proper appliances were procured and furnished by it, and it exercised due care in the employment of a fit person to take charge of the examination and repair of the same.

These requests rest upon the assumption that, in discharging his duty to examine and repair the hoisting apparatus, Schau was engaged in a common employment with the deceased. For reasons already stated, they should have been refused. But they were substantially complied with by the trial judge. He, however, further charged that it was the duty of the defendant to exercise reasonable care in the inspection of the machinery and to keep it reasonably safe and

secure, and a neglect of this duty, if an injury occurred, would be actionable negligence. The meaning of these portions of the charge taken together seems to be that while the defendant would not be responsible for negligent inspection by Schau, yet if reasonable inspection had not been made by any person, and through want of it the accident had occurred, the defendant would be responsible. Remembering that the master's duty required reasonable inspection to be made by some one, this charge was not injurious to the defendant.

The last exception is against so much of the charge as instructed the jury that, in deciding whether the deceased was guilty of contributory negligence, they should consider him as entitled to assume that his employer had exercised due care in furnishing proper appliances and in keeping them safe. In this there was no error. *Chicago and Erie Railway Co. v. Branyan*, 37 *N. E. Rep.* 190.

Counsel for the defendant, in argument, laid stress upon the fact that the trial judge frequently referred in his charge to the master's duty of using proper care to employ competent co-servants, although there was no evidence that the defendant had failed in that duty. What was said by the judge on this point was not intrinsically erroneous, and seems to have been induced by the request of the defendant's counsel at the trial. It was not then excepted to, nor was any request made for instructions to the jury that there was no evidence of a breach of that duty. Under these circumstances the defendant has no substantial grounds of complaint.

The judgment should be affirmed.

BEASLEY, CHIEF JUSTICE. This suit was brought by the defendant in error, as the administratrix of her late husband, who was in the employ of the plaintiff in error and who was killed while so working by reason, as it was alleged, of the carelessness of such employer.

At the trial it appeared that, at the time of the accident in question, the deceased was engaged in unloading of its cargo of rice a certain vessel belonging to the steamship company,

and which work was effected by means of a spar erected over the deck of the vessel, in connection with a sling to which the bags of rice were attached, being hoisted from the hold by the use of steam power. The deceased was killed by the falling of a loaded sling, the spar having given way. The apparatus thus used for hoisting the cargo was the property of the steamship company, and the deceased and his associates engaged in unloading the vessel were its servants.

There was evidence tending to show that the spar in question was out of order, and in consequence the accident had occurred. The question in controversy was whether the steamship company was answerable for this imperfection. That the company had provided proper apparatus for the execution of its business neither was nor could be denied. The apparatus that collapsed, together with other of the same kind, and which was new and unused, was, at the time of the accident, in charge of one Gerhart Schau, who thus describes the situation. He says: "I am in the employ of the North German Lloyd Steamship Company; have been in their employ thirteen years; have been on the dock ten years; my duties are to look after all the gear used on the dock—the blocks and the spars and such things—to make them and to repair them, and see that they are in good health; if they are in bad order it is my duty to repair them or to put them aside and get new ones." He had charge of the spars when not in use, and he selected the one to be used. He had under his control the particular spar that broke, but said that he did not "have it up" on the ship on the day in question. He was asked "whether he looked after the men," and his answer was: "When any of the foremen are sick I look after the men;" and to the question, "Isn't it very often the case that these spars are put up without your knowing it?" he replied: "Might be once in a while, but very seldom."

In the presence of this testimony, which was not in anywise impugned, the trial judge instructed the jury that this man Schau was a co-employe with the deceased, and that, consequently, the negligence of the former was not to be im-

puted to the company. This legal exposition seems to me plainly correct. These were fellow-servants, as they co-operated in a common business, under a common master.

Under these circumstances, I cannot agree to the idea that the negligence of Schau, in the particular in question, was the negligence of the master. The company had performed its entire duty with respect to the apparatus used, by having put into the hands of its agent, Schau, several of these spars, in good condition, and the want of care that led to the accident was in their use, and in that function the man Schau was no more the special agent of the company than his associates were. In the use of the apparatus, Schau and the men engaged in working with it were co-employes, and the master was not responsible to the others for an injury occasioned by the negligence of one of them. This was the view taken by the trial judge, and in this respect our opinions are in harmony.

After presenting the case to the jury in this aspect, the judicial instruction then was that the only ground on which a verdict for the plaintiff could be legally rested was that the defendant company had been negligent in the selection of the man Schau to fill the station occupied by him, and the finding was in affirmance of the existence of such negligence. After some hesitation, I have concluded that there was enough testimony in that respect, in the case, to preclude this court from concluding, as a matter of law, that the jury erred in putting a liability on the defendant by reason of breach of duty in this particular.

I shall vote to affirm the judgment on this ground.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, REED, VAN SYCKEL, BOGERT, BROWN, KRUEGER, SMITH. 10.

*For reversal*—None.