THE GUGGENHEIM SMELTING COMPANY, PLAINTIFF
    IN ERROR, v. EDWARD FLANIGAN, DEFENDANT
    IN ERROR.

Argued March 14 and 15, 1898—Decided November 30, 1898.

1. If the master supplies proper tools and appliances for the work in
   which his employes are engaged, he is not liable for an injury which
   one of his servants receives by reason of the servant's selecting from
   such tools and appliances one not adapted safely to his work.
2. If the master furnishes safe ladders, and a servant uses a ladder not
   provided by the master, but made by a fellow-workman as a temporary
   makeshift, by reason whereof the servant is injured, the master is not
   liable for the injury, although the servant may have reason to believe
   that the ladder he uses is one of those provided by the master.

On error to the Supreme Court.

The writ of error in this case is presented to review a judg-
ment on a verdict of the jury for $2,500, on a trial at the
Middlesex Circuit before Mr. Justice Collins.

For the plaintiff in error, *Willard P. Voorhees.*

For the defendant in error, *Alan H. Strong.*

The opinion of the court was delivered by

VAN SYCKEL, J.  Flanigan, the plaintiff below, was in-
jured by falling from a ladder while engaged in the employ-
ment of the said company.  This suit was instituted to recover
compensation for his injury.

A large number of mechanics and laborers were employed
in the work of construction.  It was Flanigan's duty to assist
the mechanics who were at work on the top of the boilers in
the boiler-room.

The ladder from which he fell was made of two scantlings
on which cross-pieces were nailed, and was constructed by
employes of the company in the carpenter shop.

This ladder was eight or ten inches shorter than the top of the wall against which Flanigan placed it, and, in ascending it, he stepped upon the second cross-piece from the top of the ladder, when the cross-piece broke from the scantling and he fell to the ground. The wall against which the ladder was placed was a green wall made of brick. When the cross-piece broke, he seized hold of the top of the brick wall, which failed to support him, the brick separating from the wall.

The plaintiff testified that there were good ladders on the premises suitable for the work in which he was engaged, and there was an entire absence of evidence to the contrary. He also testified that shortly before the accident there was a good long ladder there which he had used. He made no inquiry for that ladder, and, without any effort to procure a safe appliance, he took the one near at hand which was obviously unfit for his purpose.

The testimony of the plaintiff was that the broken ladder was made by employes of the company on the premises, and the company therefore insisted that it was not one of the ladders provided by the company, but that it was a mere temporary makeshift constructed by co-servants of Flanigan, and that for any defect in it the company was not responsible.

But waiving this contention and regarding this as one of the ladders furnished by the company, is the company liable for the alleged injury?

It is admitted that the duty was upon the company to furnish proper ladders for the work in which it was engaged, and to use reasonable care in their inspection. But when proper tools and appliances are provided upon the premises for the use of employes, no authority can be found for imposing upon the employer the further duty of seeing that the servant does not select from among a number of appliances the one not adapted to the work in which for the time he may be occupied.

If such a responsibility is cast upon the master, it would be necessary in his protection to have an *alter ego* to attend constantly upon every workman in his service, to see that he did not use an implement unfitted for his work.

The imposition of such a duty upon the master is without reason, justice or authority to uphold it.

This is not a novel question. It has been directly passed upon by this court so recently as June Term, 1896, in the case of *Maher* v. *Thropp*, reported in 30 *Vroom* 186. The deliverance of this court in that case was "that if safe and proper tools are supplied by the master, he is not liable for an injury which the servant receives by using, under the direction of the foreman over such servant, a tool not furnished for or adapted safely to the work."

In this case there was clearly no duty resting upon the employer which he failed to perform. It was apparent to anyone who exercised ordinary care and judgment that it was not safe to ascend a ladder placed against a green brick wall, and which did not reach to the top of the wall, and then to stand upon the cross-piece next to the top of the ladder. He might reasonably have anticipated that a slip or a misstep or a break from a latent defect would throw him from his position without any means of saving himself except by grasping the green wall, which could furnish him no safe support. If he had selected a ladder of proper length, of which it is admitted there were a number upon the premises, the accident would not have occurred.

No negligence on the part of the company appears in the case, and there was error, therefore, in the refusal of the trial court to nonsuit the plaintiff.

After the motion to nonsuit was denied, the company produced as a witness its chief engineer, who testified that the workmen would often pick up scantling and make a ladder for their own use, which the company tried to prevent, and when discovered would order the workman to go and get a proper ladder. He also testified that the ladder from which Flanigan fell was not one of the ladders provided by the company, but that it was made by co-servants of Flanigan.

Thereupon the counsel of the company requested the trial court to charge the jury "that the defendant is not liable for the negligence of one of the plaintiff's co-servants, and if the

jury is satisfied that the ladder was defective, and that its defective condition was due to the negligent construction of the men who constructed that ladder, the plaintiff is not entitled to recover."

In response to this request the court charged the jury as follows, and refused to charge otherwise: "It is a question entirely for you, whether reasonable care was exercised on this occasion in the construction of the ladder that this man got. Where it did come from seems to be a little doubtful. One of the witnesses thinks it was a ladder roughly put together by some of the men, but another witness, called by the defendant, says it was the ordinary ladder furnished by the defendant. However that may be, I charge you that the plaintiff had a right, after that ladder had been in position there, under the eyes of whoever was in charge of that work, having been there several days, and being necessary for him to use to get on top of the boilers, or rather that it is a fair matter to leave to you to decide whether he had not a right to assume that his employer furnished the ladder. I do not say as matter of law that you must find that the employer did furnish it; you may find that it was not so; that it was a makeshift; that some of the workmen had made it, and that the plaintiff ought to have known it. It is for you to say whether you think, under all the circumstances of the case, he was justified in thinking that it had been furnished by his employer, and for you to determine whether it had or not been so furnished. If he knew, or ought to have known, the condition of the ladder at the time of the occurrence of the accident, he cannot recover, even though the jury should find that the ladder was defective."

To this charge and refusal to charge exception was taken, and error is assigned thereon.

In my judgment, the company was entitled to have the jury specifically instructed that if the ladder was made by the co-servants of Flanigan, and was not one of the ladders furnished by the company, the injury was due to the negligence of a co-servant, for which no action would lie against the master.

This doctrine is too well settled to require citation of authorities in its support. The only inquiry is, was the request of the company substantially and fairly charged, so that the company had the benefit of it in the consideration by the jury of the evidence in the cause?

In my judgment the trial judge qualified the legal rule in such a way as to deprive the company of the benefit of it.

In the charge upon this subject above quoted the court said: "It is a fair matter to leave to you to decide whether he [the plaintiff] had not a right to assume that his employer furnished the ladder." And again the court said: "It is for you to say whether you think, under all the circumstances of the case, he [the plaintiff] was justified in thinking that it had been furnished by his employer, and for you to determine whether it had or not been so furnished."

Under these instructions, although the jury found that the company had provided safe and suitable ladders on the premises for their workmen, and that the ladder which broke was a temporary makeshift, constructed by Flanigan's fellow-workmen without the knowledge of the company, yet the jury might hold the company liable for Flanigan's mishap, if he had reason to believe that the ladder was furnished by the company.

This qualification of the legal rule is in direct conflict with the case of *Maher* v. *Thropp, supra.* In that case the workman who was injured used an appliance for his work by the express order of the foreman who was over him. He had good reason, therefore, to believe that the implements he used were furnished by the master, but this court, on review of that case, said that Maher was properly nonsuited in the trial court.

It was wholly immaterial what Flanigan believed in this regard; if his injury was caused by the negligence of a fellow-workman, he had no right of action against his employer.

It was the negligent act of the co-servant which relieved the company from responsibility, and not the knowledge on

the part of Flanigan that there was negligence on the part of his co-servant.

In this respect there was also error in the charge of the trial court, for which the judgment below should be reversed.

ADAMS, J. (dissenting).   I find no error and shall so vote to affirm the judgment.   The suit was brought by a workman against his employer.   The ground of action alleged in the declaration is the employer's failure to exercise reasonable care to provide the plaintiff with a ladder safe for use in his work.   The plaintiff in error, who was the defendant below, insists that the trial judge erred in refusing to nonsuit and to direct a verdict for the defendant and in his charge.

It is said that the refusal to nonsuit was erroneous because the ladder used by the plaintiff was obviously unfit for his purpose, and that if a master supplies proper appliances he is not liable for an injury that his servant receives because he selects from such appliances one not adapted safely to his work.   Here are two propositions—one of fact and one of law.   The proposition of law may be admitted, if by the words " not adapted safely to his work " is meant obviously unfit for or ill-adapted to his work.   *Maher* v. *Thropp*, 30 *Vroom* 186.   The proposition of fact is a deduction from the evidence, and is not sound unless the unfitness of the ladder was manifest when the plaintiff rested his case.   In my view there was no such manifestation.   The evidence showed that on May 14th, 1895, the plaintiff, a man fifty-four years old, was in the employ of the defendant, whose smelting works were under construction.   He was a laborer, and was helping a Mr. Barrett, a steamfitter, to fit pipes in the boilers and elsewhere, and had worked at that job a month or more.   For about a week the plaintiff had been engaged with Mr. Barrett in the boiler-room, where the masons had built a brick wall, which was still fresh.   There were ladders in use about the works.   The plaintiff said on cross-examination : " Plenty of ladders; I could not tell you how many."   One of them was twenty-six feet long, with rungs inserted in holes bored

in the side-pieces. The plaintiff spoke of this as "a good ladder," "a good long ladder." Peter Nolan, a laborer employed in helping the steamfitter, described it as "one of those ladders that the rungs were bored and mortised and wedged; a good strong ladder; the same as painters use." It did not appear in the plaintiff's case where this ladder was made. So far as that case showed, there was only one ladder of this kind, or, at least, only one ladder as good as this one. Nolan said, on cross-examination, "to tell the truth, I saw only one good strong ladder while I was there." A number of ladders, just how many did not appear, were made in the carpenter shop on the premises for the use of the masons, and were used by the masons, by workmen who put up the dynamo engines and by other employes. These ladders were shorter than the twenty-six-foot ladder, and had side-pieces of scantling, with strips nailed across for rungs. Up to three days before the accident the twenty-six-foot ladder was in use by Mr. Barrett and by his helpers, Flanigan and Nolan, in the boiler-room. On Saturday, May 11th, someone took the twenty-six-foot ladder away from the boiler-room to another room where men were lining retorts with fire-brick, leaving in its place one of the shorter and rougher scantling ladders. This ladder had been made in the carpenter shop a few days before the accident, of new spruce stuff, and when in position in the boiler-room reached to within from six to ten inches of the top of the wall that the masons had just built. Nolan said of this ladder, "it was a scantling ladder; it was made of spruce scantling." His testimony then proceeded as follows:

"*Q.* What size?

"*A.* I could not tell you whether the rungs were inch stuff or one and one-half inches.

"*Q.* Were the rungs inserted in bored holes or simply nailed on?

"*A.* Simply nailed on, the same as a mason has for a ladder.

"*Q.* Do you know anything about where this ladder was made?

"*A*. It was made in the carpenter shop.

"*Q*. There at the smelting works?

"*A*. Yes, sir; there were several made there for the masons.

"*Q*. How do you know that?

"*A*. Before I helped William Barrett I carried orders from the carpenter shop, and I think a couple of ladders over from there that was made there.

"*Q*. And this was one of the ladders?

"*A*. This was one of the ladders that was made there.

"*Q*. You do not mean that it was one that you carried?

"*A*. No, but that kind.

"*Q*. It was made for the use of the masons?

"*A*. Yes, sir.

"*Q*. Did the carpenters use it themselves?

"*A*. No, I didn't see the carpenters use those ladders at all; I saw them rig a scaffold for their own use."

The accident happened in the afternoon of Tuesday, May 14th. Mr. Barrett was fixing steam-pipes on top of the boiler, while Flanigan and Nolan were assisting him and going on errands for him, as the plaintiff said "helping carry pipes and helping screw them on and screw them off and taking them to the blacksmith shop, and such things." The plaintiff thus had frequent occasion to go up and down the ladder, as often as twenty or thirty times a day. At about three o'clock Mr. Barrett sent the plaintiff to the carpenter shop for a chisel. He was returning with it in his hand and had nearly reached the top of the ladder when he fell and was injured. That part of the plaintiff's case which relates to the manner of the accident is found in the testimony of himself and of Nolan. The plaintiff's evidence was that as his foot was on the second cross-piece from the top, sixteen feet above the ground, and as his shoulders were about level with the top of the boiler, the cross-piece split near its left end, swung down and hung by its right end. The plaintiff lost his balance and caught at the top of the wall to save himself. A brick came away under his grasp and he fell, leaving the ladder standing. The plaintiff was not asked, either on direct

or cross-examination, to account for the breaking of the cross-piece. Nolan testified that there was a knot in the cross-piece, near a nail, and that the cross-piece broke right by the knot. The jury no doubt attributed the breakage to this knot.

These being the facts, it is said that the trial judge should have nonsuited the plaintiff because the ladder was so obviously unfit for and ill-adapted to his work that it was negligence for him to use it. In answer to the inquiry wherein the unfitness and want of adaptation are supposed to consist, a single particular only is specified. It is said that the ladder was too short, and that the plaintiff should have anticipated that when he got to or near the top of it he might slip or make a misstep, or that something might break by reason of a latent defect and throw him from his position, so that he would be without any means of saving himself except by grasping the green wall, which could furnish him no safe support. In this view it is of no consequence that the ladder was a scantling ladder. The reasoning is equally applicable to any ladder of the same length. It is true that if the ladder had been longer the plaintiff might perhaps have saved himself. But this is aside from the point. The questions arising out of the shortness of the ladder are these: Was the ladder, under all the circumstances, reasonably well adapted to the use to which it was put? Was it manifest negligence for the plaintiff not to apprehend the breakage of an appliance that he apparently had no occasion to distrust, and not to view with concern the gymnastic feat of getting on the top of a wall from a ladder a few inches below it? I think that the opinion in which this conclusion is reached places the standard of physical activity too low. An able-bodied workman who was sure of his ladder would not find this situation difficult, and ought not to be thrown out of court because he did not foresee that which, so far as appears, he had no reason to expect. If, out of these facts, any imputation of contributory negligence could fairly arise, there was at least enough doubt about the matter to make it a question for the jury.

The aspect of the case, when the motion to direct a verdict

was made, was not essentially different from what it was when the defendant moved for a nonsuit. Evidence had been received on behalf of the defendant tending to show that the cross-piece did not split. This raised a question of fact for the jury. Other evidence had been received on behalf of the defendant tending to show that the ladder from which the plaintiff fell was not furnished by the defendant; that the ladders built by the defendant were not scantling ladders, but were made with rungs inserted in the uprights and nailed—"excellent, well-built ladders"—and that the scantling ladders were improvised by the workmen without the consent and against the will of the defendant. This raised another question of fact for the jury, because it contradicted, or at least was inconsistent with, the testimony of the plaintiff and of Nolan, and contradicted, or at least was inconsistent with, inferences naturally derivable from their testimony.

The defendant's witnesses gave some further evidence that rather strengthened the plaintiff's case. It was thus shown that scantling ladders are commonly used by masons and are suitable for light work, and specifically that the particular ladder from which the plaintiff fell "was one of the ordinary ladders that were in common use about the place," and that it appeared to those who had occasion to use it to be a good one of its kind and to be in sound condition up to and on the day of the accident. There is no evidence that it had been weakened by heavy weights. The plaintiff, when he fell, was carrying only a chisel. Upon these proofs it was not error to refuse to direct a verdict for the defendant.

In the brief of counsel for the company contributory negligence is attributed to the plaintiff, not because he used too short a ladder but because he was inattentive to the knot. This seems to be the critical point of the case. As it is not mentioned in either of the opinions that together express the views of a majority of the court, it will not be amiss to touch upon it. The argument is that, in an apparatus so simple as a ladder, a structural defect which the inspection of an

employer would reveal must necessarily be obvious to a workman. This is an assumption of fact which the proof in this case does not warrant. The matter stands thus : The company, if it furnished the ladder, was bound to inspect. The workman who used the ladder was bound to observe. These duties are not of the same grade. Inspection is more searching than observation. A workman can assume that his employer has performed the duty of inspection. The plaintiff adduced evidence tending to show that the defendant furnished the ladder for the use of its workmen ; that it contained a structural defect ascertainable by inspection and which exposed the plaintiff to unnecessary risk, and that this defect occasioned injury to him. This made out a *prima facie* case. The defendant's witnesses gave no information about the knot. The same question as to this defence was presented by the motion to nonsuit and by the motion to direct a verdict. It was this, did it affirmatively appear, from the testimony on behalf of the plaintiff, that the defect in the ladder was so obvious, so conspicuous, so glaring, as to make it error for the trial judge not to take the question of contributory negligence away from the jury?

The inquiry is not whether the testimony on the part of the plaintiff showed that he was not negligent, but whether it showed that he was negligent. It is well to bear in mind, in using New York cases, that the rule in that jurisdiction is the other way. *Cahill* v. *Hilton,* 106 *N. Y.* 512. The evidence did not show how large the knot was—whether it was yellow or black, tight or loose, superficial or extending through the cross-piece. It did not show just how near the nail was to the knot. In *Jenney Electric Light and Power Co.* v. *Murphy,* 115 *Ind.* 566, the defect in a ladder was that one of the side-rails was broken off about twenty inches from the top, at or near the point where the top round entered the rail. In *Foley* v. *Jersey City Electric Light Co.,* 25 *Vroom* 411, the defect was that a step on an electric light pole was missing. To see a hole in a ladder is proverbially easy—much easier, certainly, than to see a knot and its relation to a nail. The

question may be asked again, did it affirmatively appear that the defect was so manifest that the plaintiff should have seen it? To me it appears affirmatively that it did not affirmatively so appear. But it is not necessary to go as far as this. It is enough that the evidence left the matter in some doubt. "Where there are doubtful and qualifying circumstances, the question of negligence or want of proper care is a matter of ordinary observation and experience of the conduct of men, and as such must be left to the jury as being within their legal province. The law has said in these cases that the plaintiff shall have the judgment of twelve men and not the opinion of one man." *Bonnell* v. *Delaware, Lackawanna and Western Railroad Co.*, 10 *Vroom* 189, 192.

Error is attributed to the trial judge for not laying down to the jury the familiar rule that a master is not liable to his employe for the negligence of a fellow-workman. In order to pass intelligently upon this branch of the case, it is important, first, to notice just what the issue of fact was. It was this, did the defendant furnish the ladder that broke, or did it not furnish that ladder? The plaintiff insisted that the defendant furnished it for the use of its workmen, and produced evidence tending to prove that proposition. The defendant denied that it furnished the ladder, and alleged that it was a temporary makeshift put together by some of the men, on their own responsibility, without the knowledge and against the will of the defendant. It is thus evident that, accurately speaking, the law as to the negligence of a fellow-servant is not an element in this case. Either the defendant furnished this ladder or it did not. If it did not, there is no liability. If it did, and if it performed imperfectly the duties of making and of inspection, the defendant must answer in damages. Either way, it is of no consequence who was employed to construct the ladder. If the defendant was not negligent in discharging a legal duty, the action fails. If the defendant was thus negligent, the co-operating negligence of a fellow-servant will not excuse it. If an employer fails toward a workman in the duty to furnish tools and appli-

ances and to inspect them, it is no defence that a fellow-workman has been careless.

Where an employe is injured by the joint negligence of the employer and of a fellow-workman, the employer is liable. *Maher* v. *Thropp*, 30 *Vroom* 186 ; *Bev. Negl.* 743. This case is not within the exception mentioned in the opinion of this court in *Steamship Co.* v. *Ingebregsten*, 28 *Vroom* 400, for the proof shows that the carpenters who made the scantling ladders did not make them for their own use and did not use them. I am therefore unable to assent to the proposition that the defendant " was entitled to have the jury specifically instructed that if this ladder was made by the co-servants of Flanigan and was not one of the ladders furnished by the company, the injury was due to the negligence of a co-servant, for which no action would lie against the master." Such an instruction might, I fear, have occasioned in the minds of the jury the kind of confusion that is the natural product of irrelevance. It is true that no such action would lie. The reason for the failure of the action would be not that the ladder was made by co-servants, but that it was not furnished by the defendant. Judges differ in the amplitude with which they present a topic to a jury. It is a matter of discretion how far it is judicious to introduce collateral ideas. I think that in this case the trial judge wisely exercised his discretion in favor of the direct line of decision.

Again, error is attributed to the trial judge for instructing the jury in the following words : " It is a fair matter to leave to you to decide whether he [the plaintiff] had not a right to assume that his employer furnished the ladder." And again : " It is for you to say whether you think, under all the circumstances of the case, he [the plaintiff] was justified in thinking that it had been furnished by his employer, and for you to determine whether it had or had not been so furnished." The context may be found in the opinion by Mr. Justice Van Syckel. It is said that, under this instruction, the jury might hold the defendant liable, although satisfied that it did not furnish the ladder, if they concluded that the

plaintiff had reason to believe that the fact was otherwise. This does violence. to the charge. The jury could not have understood that they were authorized to substitute the plaintiff's supposition for a fact. It is plain, I think, that the trial judge had in mind the leading case of *Mills* v. *Maine Ice Co.*, 22 *Vroom* 342, decided by this court, and was applying to the facts the rule there declared. That was the case of a defective ladder in the hatch of a vessel. The plaintiff, after safely using the ladder all the forenoon, was hurt in the afternoon by a fall, resulting from the breaking of a strip which had been insecurely nailed across the side-bars of the ladder. ˙He sued the owner of the vessel and was nonsuited because it was not directly shown that the defendant had provided the ladder for its workmen. This court unanimously set the judgment of nonsuit aside, with these words : " We think that the evidence established necessity for a ladder in the prosecution of the defendant's work, and the possession and control of the ladder referred to by the defendant, in a position where it could be and was used by the defendant's workmen, and hence made *prima facie* proof that the ladder was provided for the use of its workmen by the defendant." The instruction under review harmonizes with this decision. It substantially told the jury that the history of the ladder and the uses to which it had been put were evidence upon the question whether the defendant furnished it. There is nothing in the case of Maher *v.* Thropp to contradict this instruction, which is, indeed, only an application of the familiar rule of law and good sense that every person is chargeable with the inferences naturally arising from his own conduct.

I am authorized to say that Justices Dixon, Lippincott and Ludlow and Judges Bogert and Hendrickson concur in this opinion.

GARRISON, J.   I vote to reverse because the defendant's request that the jury be charged respecting the legal effect of a co-servant's negligence was not complied with, although the trial judge stated that the testimony upon this point was conflicting and that the fact was one for the jury.

*For affirmance*—DIXON, LIPPINCOTT, LUDLOW, ADAMS, BOGERT, HENDRICKSON.   6.

*For reversal*—THE CHANCELLOR, DEPUE, GARRISON, GUMMERE, VAN SYCKEL, NIXON, VREDENBURGH.   7.