THOMAS McDONALD, PLAINTIFF IN ERROR, v. THE STAND-
ARD OIL COMPANY, DEFENDANT IN ERROR.

Argued March 16, 17, 1903—Decided June 22, 1903.

1. It is accepted law in this state that, under the contract of employ-
ment, it becomes the master's duty to take reasonable care to pro-
vide a proper and safe place in which the servant may work, to
furnish suitable tools and implements with which he may work,
to inspect and repair the apparatus at reasonable intervals, and to
select and employ competent workmen.

2. It is also accepted law in this state that, under the same contract,
the servant, on his part, assumes the risks incident to his employ-
ment, including such as arise from the negligence of a fellow-
servant, engaged under the same master, in the common employ-
ment; also those plain and obvious dangers which are apparent to
one of ordinary skill and understanding.

3. Where an adult workman, of ordinary intelligence, who had been
engaged for four or five weeks in cutting the heads from the rivets
of an old tank, lost an eye by injury from a flying metallic chip—
the flying of the chips being frequent and easily observable—*Held*,
that the doctrine of assumed obvious risk obtains with full force,
and a judgment of nonsuit will not be reversed.

On error to the Supreme Court.

This was an action of tort brought by the plaintiff against
the defendant corporation.

The plaintiff's declaration alleged that the defendant was
the possessor of certain tanks made of iron or steel plates
fastened together with rivets; that the plaintiff was a general
workman or laborer in the defendant's employ; that the par-
ticular duty assigned to him was to hold a cold chisel upon
the edges of the rivets, while another workman struck the
chisel with a hammer, so as to cut the heads from the rivets
and separate the plates; that the plaintiff was without knowl-
edge of the dangers of the employment, and was unacquainted
with the necessary tools and necessary shields to be used
therein; that the defendant did not provide suitable tools or
chisels, or any shield whatsoever to protect the plaintiff, and

did not warn him of the dangers of the business, by means whereof, while the plaintiff was at work on a certain day, a piece of the tank or of a rivet was chipped off and thrown with great force against the plaintiff's left eye, and thus the sight thereof was permanently destroyed and the sight of the right eye endangered, which injuries were sustained by the plaintiff solely through the defendant's negligence.

The defendant pleaded not guilty of the supposed grievances, and the issue joined thereupon was sent down to the Hudson Circuit for trial.

The plaintiff's own testimony at the trial showed that the plaintiff was a laborer, never having learned any trade; that about the middle of August, 1900, he, with other men, was employed by the defendant to take down certain metal tanks at Bayonne, which had been injured by an oil fire; that a foreman gave them tools and showed them what to do; that the men worked in pairs, and to the plaintiff and his companion were given a sledge hammer and a "set," described as a chisel with a blade about six inches wide and a handle about a foot long; that the foreman showed the plaintiff how to hold and use the set; that he and his companion worked on the side of a tank between three and four weeks, and then, a little more than a week, on the bottom of a tank, and, during all this time, the plaintiff never saw or heard of a "stopper" (a primitive contrivance to keep chips from flying), but he observed that the pieces of rivets flew according to the way in which the set was held and the sledge was struck—that is to say, in the general line of the blow—and that on Friday, September 14th, while he was holding the set against a bottom rivet, and his associate was striking, a "shave of the rivet" flew into his left eye, causing him to undergo eleven weeks of hospital treatment, great physical pain and the ultimate loss of the eye.

From other witnesses sworn by the plaintiff it appeared, according to the experience of a practical boiler-maker, that the cutting of iron or steel with a chisel is dangerous; that in shops in which he had worked, swabs (little sticks with rags or cotton waste about them) were held in front of the

rivets, when cut, to prevent them from hitting anybody; that chipping is common, and that it is hard to tell in what direction a chip might go, for (as he said) "you might hold the set a little cat-a-corner and it would go to me, or hold it this way and it would go to you;" and, according to the observation and experience of a professor of mechanical engineering, that in cutting rivets, fragments fly off in a constant bombardment; that this fact is discoverable after the first few blows, and that it is customary to require students to protect their faces by holding over the hand and over the chisel a handkerchief or something like it.

At the close of the plaintiff's proofs the trial justice took the case from the jury and ordered a nonsuit. This direction is the subject of the only assignment of error.

For the plaintiff in error, *F. E. Kellogg* and *D. Emery.*

1. The evidence does not warrant the conclusion that the plaintiff assumed the risk of such an accident.

2. The defendant failed to perform its duty to its servant in not supplying proper tools or appliances, and in not warning the plaintiff of the dangers of the work.

3. The questions on which the judge based the nonsuit should have been submitted to the jury.

For the defendant in error, *Charles W. Fuller.*

1. The danger to the plaintiff was obvious.

2. It was assumed by the plaintiff in his employment.

The opinion of the court (the foregoing statement having been made) was delivered by

GREEN, J. The facts in the case and the arguments made thereon bring to view two legal principles which are fully recognized in the jurisprudence of this state.

1. Under the contract of employment it becomes the master's duty to use reasonable care to provide a proper and safe place in which the servant may work, to furnish suitable tools and implements with which he may work, to inspect and

repair the apparatus at reasonable intervals and with ordinary prudence, and to select and employ competent workmen. This rule of duty was stated at least as early as the case of *Harrison* v. *Central Railroad Co.*, 2 *Vroom* 293 (1865), and in this form (at *p.* 300) : "An employer contracts with his employe to use reasonable diligence to protect him from unnecessary risks, and for· * * * negligence or want of care he will be answerable· * * * for all the damages which may ensue." In the form herein set forth, its several parts may be drawn from the case just cited. *Maher* v. *Thropp,* 30 *Id.* 186, 188; *Atz* v. *Manufacturing Co., Id.* 41, 45; *McAndrews* v. *Burns,* 10 *Id.* 117, 119. This is settled law in this court. *Maher* v. *Thropp, supra; Steamship Co.* v. *Ingebregsten,* 28 *Vroom* 400; *Western Union Telegraph Co.* v. *McMullen,* 29 *Id.* 155; and later cases, including *Campbell* v. *Gillespie, ante p.* 279. The rule has also been negatively defined in this court thus: The master "is not bound to adopt the latest improvements in machinery, neither is he liable for an accident which would not have occurred if such improvements had been adopted. He is not required to furnish the best appliances possible to be obtained, but they must be reasonably safe and kept so." *Fenderson* v. *Atlantic City Railroad Co.,* 27 *Id.* 708, 712; see *Randolph* v. *New York Central and Hudson River Railroad Co., ante p.* 420.

2. Under the same contract of service, the servant on his part assumes the risks ordinarily incident to his employment, including such as arise from the negligence of a fellow-servant engaged under the same master in the common employment; also those special dangers which are plain and obvious to one of ordinary skill and understanding. This principle also appeared in the discussion in *Harrison* v. *Central Railroad Co., supra,* and (at *p.* 297) was thus stated: It is "every way reasonable that the servant should take upon himself the usual perils of the employment." In the more modern dress in which it is now set forth it may be found in *McAndrews* v. *Burns, supra; O'Brien* v. *American Dredging Co.,* 24 *Vroom* 291, 292; *Foley* v. *Jersey City Electric Light Co.,* 25 *Id.* 411, 412. This principle is accepted law in this court. *Smith* v. *Irwin,*

22 *Id.* 507, 508, 509; *Western Union Telegraph Co.* v. *Mc-Mullen,* 29 *Id.* 158. It also has its negative definition in this court. Although a servant is entitled to assume that the master has exercised reasonable care and skill· in providing for the servant's safety (*Carroll* v. *Tidewater Oil Co.,* 38 *Id.* 679) and in so doing is nòt guilty of contributory negligence (*Steamship Co.* v. *Ingebregsten,* 28 *Id.* 404),·nevertheless, if the servant is warned or notified of a danger arising from the master's negligence, or, if the danger becomes so obvious that a reasonably prudent servant, under the circumstances, would observe it, no action will lie against the master for an injury to the servant. ·*Smith* v. *Erie Railroad Co.,* 38 *Id.* 636.

3. The two principles thus stated are not inconsistent with each other, but are complementary; although one or the other may obtain more strongly as the facts of the given case may vary. The proofs in the case in hand show that the servant who lost his eye was not an infant, to whom the dangers of work should be explained in terms suited to youthful comprehension (*Smith* v. *Irwin, supra*), but an adult, seemingly of average intelligence; that he had received instruction as to modes of working, and that, according to his own words, the tools were all right, excepting, perhaps, the swab, or stopper, which, as a mere stick and bit of rag, might easily have been provided by the servant himself. The proofs also show that the flying of the metal chips was common and frequent; that the direction of flight was not absolutely uniform, but variable within certain limits, and that these facts might be observed after a few blows; furthermore, that the injury did not occur in the first hours of employment (if it had, there might have been a question for a jury, under the ruling in *Pierce, Administratrix,* v. *Camden and Gloucester Railway,* 29 *Vroom* 400, 403), but after four or five weeks of regular employment.

The danger was not latent as it was touching the strength of the railroad trestle, in *Paulmier, Administrator,* v. *Erie Railroad Co.,* 5 *Vroom* 151; or in the use of a new and power-

ful explosive compound, in *Smith* v. *Oxford Iron Co.*, 13 *Id.* 467; or in the unexpected flow of an invisible electric current, in *Western Union Telegraph Co.* v. *McMullen, supra;* but the danger was open and apparent to a man of ordinary intelligence. The source and nature of the risk were as easy to be seen and understood as it was in *Foley* v. *Jersey City Electric Light Co.*, 25 *Vroom* 411.

In such a state of facts, we think that the principle of assumed obvious risk obtains with full force. Even though it be conceded that the master might have supplied a swab or stopper, the principle is not excluded, because the duty of self-protection should have led the servant to make and use some simple shield, or to observe the danger of working without one. *McGrath* v. *Delaware, Lackawanna and Western Railroad Co.*, 39 *Vroom* 425. In our view, we are not unduly extending the doctrine of obvious risk, either in theory or illustration. In *Coley* v. *Griffing Iron Co.*, 34 *Id.* 609, this court said (at *p.* 612) : "The servant assumes all the risks and perils usually incident to the employment, and included therein are those which it is a part of his duty to take knowledge of by observation." In *Hesse* v. *National Casket Co.*, 37 *Id.* 652, 653, the facts were that a boy of sixteen years was accustomed, while at work, to stand upon a foot-bench beside a circular saw, and that, on a certain day, by the tipping of the bench, he was thrown upon the saw-table and injured. A majority of this court affirmed a judgment of nonsuit, saying: "The fact that a bench would tip over, if a person standing upon it should move beyond its center of gravity, was perfectly obvious, and the plaintiff, although a minor, was chargeable with notice of that fact." In this general connection, *Kenney* v. *Hingham Cordage Co.*, 168 *Mass.* 278, at least in respect of the language used at *p.* 282, is pertinent.

In the foregoing discussion no allusion has been made to the fact that the flight of the hurtful chip was, in part, due to the co-operating blow of the plaintiff's companion in labor. No such allusion is needed, inasmuch as (if the companion were negligent) the two men were evidently co-servants, engaged under one master, in a common employment.

Finding no legal error in the record, we affirm the judgment of nonsuit, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VOORHEES, VROOM, GREEN. 15.

*For reversal*—None.

