*31 Vroom.*     Belleville Stone Co. v. Mooney.

THE BELLEVILLE STONE COMPANY OF NEW JERSEY, PLAINTIFF IN ERROR, v. HENRY MOONEY, DEFENDANT IN ERROR.

1. When the declaration, in an action, by a servant against his master, for personal injuries, by reason of the negligence of the master, avers that the business was a dangerous one, and that the master neglected to exercise reasonable care to provide a safe system for the conduct of the work, and also neglected to exercise reasonable care to provide a safe place in which the servant could perform his work, evidence to show that the master, or the general superintendent of the business, had promised the servant to adopt a safer system, or provide a safer place, or remedy the defect or danger which existed, is admissible in proof for the servant, although no averment of such promise is contained in the declaration.

2. Such evidence is admissible on the ground that it bears upon the question whether such reasonable care as is required by law has been exercised by the master during the continuance of the employment of the servant, in providing a safe system or a safe place, and also as tending to show what the dangers were to which the servant was exposed, and with which the service was attended, and whether they were incidental, obvious or such as the servant might perceive by the exercise of ordinary care.

3. Such evidence is also admissible on the part of the plaintiff to show that the servant was free from contributory negligence.

4. Whether the master has exercised reasonable care to provide a safe place for the servant to do his work in, or a safe system by which to do it, or whether the injury to the servant arose from incidental or obvious dangers, or from risks arising from his own want of ordinary care, or from his contributory negligence, when the facts are in dispute, or where, from the evidence, opposite conclusions can be reasonably drawn, are questions which by the trial court must be submitted to the jury.

5. It is the duty of the master to exercise reasonable care to provide a safe place for his servant to work in, for his protection from all but the assumed and excepted dangers, and this duty remains the same where the dangers arise to the servant by reason of the adoption or use of a system by which the business of the master is performed or conducted.

6. If this general duty is entrusted by the master to his agent, superintendent, or a co-servant of the servant injured, the negligence of such agent or superintendent in the performance of this duty is imputable to the master.

7. Where the system of the working of a stone quarry was one whereby no protection was afforded to the workmen engaged in another portion of the quarry apart from the blasting, from injury from flying stones, caused by the explosions of the blasts in the rock, except the warning word "fire," given at the time the fuse was communicated to the explosives of the blast, and one of the rules of the master was that no employe should leave his work to seek safety from the dangers of the blast until the warning "fire" was given by the foreman, whose duty it was to light the fuse, it became and was the duty of the master in the exercise of reasonable care to have such warning announced sufficiently long enough before the explosion for such workmen or employes, in the exercise of ordinary care, to reach a place of safety; and this duty being delegated to such boss or foreman, does not relieve the master from the liability to answer for the neglect of the boss or foreman to perform that duty. This neglect is not an incidental act of the co-service.

8. Where the master, or one representing the master as general superintendent of the work, promises a servant engaged in such work to remedy and obviate a certain danger to which the servant has called his attention, this promise does not relieve the servant from the further assumption of the risks of danger if the risks or dangers be obvious or incidental to his employment, or of risks, the danger from which he in the exercise of ordinary care could discover or know, and the master will not be liable for an injury resulting from such risks; but if the employment of the servant be in such a place or under such circumstances that he cannot know of the danger or it is not obvious to him, he can continue in the employment under the assumption that the promise will be performed for his protection, and the master will be liable for injury to him resulting from the danger arising from the default of the master in the non-performance of the promise.

9. Where an injury arises to a workman by reason of the united negligence of a master and a fellow-servant, the master is liable to respond for such injuries.

On error to the Essex Circuit Court.

Argued at February Term, 1897, before Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the plaintiff in error, *Joseph Coult* and *Hayes & Lambert.*

For the defendant in error, *Samuel Kalisch.*

The opinion of the court was delivered by

LIPPINCOTT, J. The defendant in error, plaintiff below, was a quarryman in the employ of the Belleville Stone Company of New Jersey, plaintiff in error, defendant below, in its stone quarry at Avondale. It will be more convenient to denominate the parties as plaintiff and defendant, as in the action in the Circuit Court.

On March 24th, 1897, the plaintiff was injured by being struck by a stone from a blast of rocks in the quarry. At the time of the accident he was working at the foot of a derrick, some distance from where the blasting was going on and some distance from the blast which occasioned his injury. Another workman, by the name of Kerr, was upon the derrick, painting it, and the plaintiff's work was to remain and be at the foot of the derrick, with his hold on the rope by which Kerr was being raised and lowered, as the work of painting progressed, and by which Kerr was lowered in order to alight and reach a place of safety, when the explosions of the blasts took place in the quarry. The plaintiff's duty at the foot of the derrick was to hold the rope continuously, to raise and lower Kerr according to his directions, and when a blast was about to take place, to lower him and assist him to alight from the board or chair to which the rope was attached, in order that Kerr could avoid the danger of the blasts. The plaintiff had been in the employ of the company about two years, as a laborer and quarryman. He had worked in other quarries before this employment. One Andrew Barr was superintendent of the quarry, having the power to employ and discharge workmen and the general charge and supervi-

sion of the work in the quarry. Subordinate to him was one Perkins, who had the immediate charge of the workmen and was called the foreman or boss. The fuse communicating with the explosive was lighted by Perkins and the warning of "fire" was also given by Perkins. The plaintiff, on this occasion, when the warning of "fire" was given, proceeded to lower Kerr from the derrick, in order that he might reach a place of safety from the danger of the exploding blasts. Kerr was at work about sixty feet up this derrick. The plaintiff proceeded to lower Kerr and help him from the board or chair which was attached to the rope by which he was raised and lowered. Both the plaintiff and Kerr then ran away from the blast, and as they neared the engine-house or shed which stood in the quarry, the blast exploded and the stones and earth began flying around them. They both ran into the engine-house, and just as the plaintiff had fairly entered a stone came through the roof and struck him on the head. He received serious and permanent injuries, for which this action was brought. The blasts in the quarry were never covered, and the only precaution for the safety of the workmen was the warning of "fire" which was given in order that they could seek a place of safety from flying stones and earth caused by the explosion of the blast.

The first position taken by the defendant is that the trial court should have directed a nonsuit on the following grounds :

*First.* That the plaintiff had not proved the negligence alleged in the declaration as a cause of action, and that no actionable negligence had been established against the defendant.

*Second.* That the negligence, if any had been established, was the negligence of Perkins, the foreman, as a co-servant.

*Third.* That the plaintiff himself was negligent in going inside the engine-house instead of staying outside, where he could see the stones and dirt.

*Fourth.* That the accident and injury to the plaintiff arose from risks and dangers which were incidental to his employ-

ment, open and obvious to him, and which were perceivable by him in the exercise of ordinary care.

An examination of the declaration, in answer to the first point, reveals the averments that the business of blasting in this quarry was one attended with great dangers, and that the employes were required to remain at their respective work until the order to fire the blast was given, at which time the fuse which communicated with the explosives used for the blasts would be lighted, and that between the time of the lighting of the fuse and the time of the explosion, the employes were required to seek a place of safety. The further averments of the declaration, so far as the question presented is concerned, are that it was the duty of the defendant to use due and proper care that a timely warning should be given to its employes when such blasts were being made, and to use due and proper care that its employes should have reasonable time to seek a place of safety before such explosions resulting from the blasts should take place, and again, to use due and proper care to provide and maintain a place of shelter and safety for the use of their employes while said blasting was being made and had; and that the defendant had not regarded its duties in this behalf, and had not exercised the due care required in these respects, whereby and by reason of which neglect the injuries complained of had accrued to the plaintiff.

The averments of the declaration in themselves, of the negligence, are manifestly sufficient.

In the plaintiff's case much evidence was admitted without objection to show the situation and condition of the quarry, the system according to which the work of quarrying stone was carried on, the character of the work, and the dangers connected with it, and the precautions afforded, and the degree of care exercised to protect the workmen from the danger which occasioned the injury to the plaintiff. It is not contended at all that this class of evidence was inadmissible under the averments of negligence contained in the declaration, and it is a fair question whether the plaintiff, under his evidence,

had not established such facts as required the submission of the case to the jury.

But early in the trial of the cause a question arose as to the admissibility, under the averments, of the declaration of evidence of a promise made by Barr, the general superintendent, before the accident, to give a longer time between the warning of "fire" and the explosion of the blast, to enable the quarrymen to get out of the way of danger from the blasts. The evidence, in substance, which was admitted against objection and exception, was that the plaintiff and other workmen, a few days before the accident, made complaint to Barr that a sufficient time was not given after the warning "fire" for them to escape the dangers of the blasts, and that upon such complaints to him he promised to remedy the defect or danger complained of. The defendant company contends that this evidence was not admissible under the averments of the declaration, and that it forms an element of negligence not declared upon, and that for this reason a nonsuit should have been granted.

That this evidence was admissible under the allegations of the declaration cannot be questioned. If, for any purpose, it was admissible, the court would not exclude it. Whether it was such as created a new element of negligence may very well be questioned, but if admissible for any legal purpose it could not be rejected by the trial court. The duties of the defendant as the master of the plaintiff were set out in the declaration, and certain neglects were charged, having relation to the time given between the signal of warning, as a precaution for the safety of the plaintiff and the explosion, which was the danger from which the workmen were to seek refuge, and during the course of and continuance of the employment of the plaintiff the conduct of the defendant, as the master of the plaintiff or those representing the master in the management and control of the workmen and in the performance of the duties of the master, has a direct relevancy to the question whether the due care required by law in behalf of the workmen was exercised. It exhibited not only the danger-

ous character of the work, its lurking or secret dangers and defects, but also tended to show the system under which and by which the work was conducted, and bearing directly upon the establishment of the known or unknown dangers of that system, and as to the care required of the master under all the circumstances. As the averment of the declaration stood at the time of the admission of the evidence, it was pertinent upon the subject to go to the jury, whether this risk of danger was fairly within the contract of hiring or not. The evidence in no respect changed the character of the contract of employment in any of its terms or implications, nor furnished any distinctly new element of negligence upon which a recovery was sought. It tended directly to prove the dangers or the defects of the system by which the work was being operated, or the dangers and defects of the work as conducted there by the defendant, and indicating, considering it to be true, the character of care required to be exercised at that time for the safety of the workmen.

It was, as it seems to me, pertinent to the issues presented, of whether the care required by the contract subsisting between the plaintiff and defendant had been or would be in the future exercised on the part of the defendant. The assertion of the counsel of the plaintiff was that it was to be used as a substantive fact bearing upon the question whether the accident was the result of negligence on the part of the vice-principal of the defendant whilst the plaintiff was engaged in his employment, and as such a fact it seems to me that this evidence was plainly admissible.

It was applicable to existent dangers, and tended to show that they were not such as the plaintiff could guard against himself unless by the exercise of a certain character of care required of the master.

The assurance of removal was given, and without making the assurance good the danger could not be removed. The care to be exercised required the promise to be made good, and without it the care required was not exercised.

Upon the evidence of a promise to remedy the defect, the plaintiff continued in his employment and without its performance the question would arise whether the care required had been exercised. The non-performance was a fact pertinent to the question.

The plaintiff is not bound to aver in his declaration any change in the risk and dangers of the work which affects the question of care required. That is a matter of evidence as determining whether due care had been exercised or not, and as applicable to the averments of the declaration that such care has not been exercised.

The duty of the master continues throughout the entire work, and the care to be exercised in the performance of that duty is often regulated and modified by facts and circumstances which occur during the progress of the work.

This evidence was admissible under the averments of the declaration, if not bearing upon the question of the negligence of the master, yet for the purpose of rebutting any insistment of contributory negligence of the plaintiff.

It certainly was evidence to rebut any presumption of contributory negligence on the part of the workman, raised by reason of continuing in the employment in the presence of obvious dangers.

It is admissible as bearing upon the question of what is necessary at different stages of the service for the master to do in order to discharge the duty of the exercise of reasonable care. *Laning* v. *New York Central Railroad Co.*, 49 *N. Y.* 521.

As I understand the plaintiff does not claim recovery on the ground of a breach of the promises by the superintendent standing in the place of his principal; it was only offered and admitted in aid of his case, and founded upon the contention of the want of due care in the respects to which it was alleged in the declaration. For this purpose it was admissible if for no other. *Hough* v. *Railway Company*, 100 *U. S.* 213.

No objection is or can be alleged on the part of the defendant to the admission of this evidence on the ground of

surprise.   When the evidence was admitted early in the trial of the case leave was given by the learned trial justice to the plaintiff to amend if desired.   The plaintiff made no motion to amend nor expressed any desire to do so and I do not now understand that it is desired.   *Gen. Stat., pp.* 27, 2555, §§ 10, 136, 138.

The existence of this promise as a question of fact was liti gated throughout the entire case.   Its existence was denied on the part of the defendant, by the denial of the superintendent and other evidence as to the character of the conversations out of which this alleged promise arose.

There was no error by the trial court in the admission of this evidence, and no ground of nonsuit exists because of the existence of this evidence.

It is also alleged in support of the motion to nonsuit that there existed no proof in the case of the negligence of the defendant, either in the manner of blasting or in the system under which it was conducted.

The general rule is that the master is bound to exercise reasonable care to provide a safe place for his servant to perform his work, and to furnish and adopt such means that he may be assured reasonable safety and protection in his work, and to exercise reasonable care to keep and maintain the place and means reasonably safe.   The qualifications of the rule are that the workman takes upon himself during the continuance of his employment all the risks and dangers incident to his employment which are obvious or can be perceived by him in the exercise of his senses and the use of ordinary care and circumspection.   *Van Steenburgh* v. *Thornton,* 29 *Vroom* 160; *Comben* v. *Belleville Stone Co.,* 30 *Id.* 226; *Steamship Company* v. *Ingebregsten,* 28 *Id.* 226.   Under these rules, the learned trial court left to the jury the questions of whether this accident was due to the negligence of the defendant in failing to provide a reasonably safe and proper place for the plaintiff to work, and also whether it was due to the negligence of the defendant in providing a system by which the work was done which included dangers to the

plaintiff which were unknown to him, and not discoverable by him in the exercise of ordinary care, but which were known to the defendant, and under its control, in the management of the work of the quarry, and also the questions whether the accident was one due to obvious risks or dangers, or risks and dangers which he could or should have perceived in the use of his senses or by ordinary care on his part.

These questions must be determined now on this motion to nonsuit upon all the evidence in the cause.

. It was in evidence that one of the rules of the defendant company was that no employe should leave his work to seek safety from the explosion of a blast until the warning "fire" was given, under the penalty of being discharged, and it was proved that this rule was one which was inflexibly enforced in the work in this quarry. The evidence was also that the surface of the quarry was rough and uneven, making it a matter of some difficulty to escape danger. The circumstance must be taken as proved that the plaintiff here was not one of the workmen engaged in preparing or working at the blast, nor near to it. He was at some distance from it, and it is on this motion fair to conclude, in a position where he could not see what was going on at the place of blasting and explosion. He could not see when the blast was ready for the lighting of the fuse, nor when it was to be, or was lighted. His attention was entirely diverted from the means of any such knowledge by the character of his duties, which were to hold the rope, to keep his eyes on Kerr up in the derrick, and, according to his direction, to raise and lower him, and listen for the warning and then lower Kerr, aid him to alight, and then both seek a place of safety.

Barr was the general superintendent. Perkins was the foreman, and it was the duty of Perkins to give warning to the workmen to get out of the way of danger from the blast. No place of shelter was provided, and the workmen were obliged to go, in order to be safe, so far away from the blast that there could exist no danger of flying stones or missiles reaching so far, or that their approach could be seen and

avoided.   Perkins, the foreman, was vested with the general power to supervise and direct the workmen engaged in the quarry.   Among his other duties, as it appears in the evidence, and one which he invariably performed, he was to see the fuse lighted and give the warning " fire."   No other employe or servant at work in the quarry was empowered to perform or ever did perform this duty.   The danger was that time sufficient would not be given after the warning " fire" and before the explosion, for the plaintiff to reach a place of safety.   So far as this system of performing the work was concerned, the plaintiff could not know whether the care required was exercised or not.   So far as anything could be, the control of this warning was not within his perception or knowledge, and it was one of the concealed dangers of the work of which he could know nothing.

Under these circumstances the rule of law held the defendant to the exercise of reasonable care that there should be a space of time reasonably long enough for the workmen to reach a place of safety.   This was the defendant's duty in the actual conduct of the work going on then and there in that quarry.   And this was his duty under the system by which the work was being conducted, and it was a duty the neglect of which would be imputable to the defendant. *Steamship Company* v. *Ingebregsten, supra.*

This degree of care must be exercised there with regard to the workmen engaged on different parts of the work, and with special application to the work in which each workman was engaged.    *Comben* v. *Belleville Stone Co., supra ; Van Steenburgh* v. *Thornton, supra.*

The facts show that before the time of this accident the plaintiff had been engaged in drilling holes in the rock at the places of the blast, that he had been taken from such work and placed to perform the work at the foot of the derrick, and it was concededly his duty to remain there and at all times to maintain his hold of the rope in order to elevate and lower Kerr in his work of painting, and to lower him to escape the danger arising from the blasts.

The evidence on the part of the plaintiff is very clear to my mind that the time between the warning "fire" and the explosion of the blast, was entirely too short to give the plaintiff a reasonable opportunity to assist Kerr down and out of his chair, as he was bound to do, and as it was necessary for him to do, and seek a place of safety. On this motion it may be said that he did not nor could he reach a place where it was reasonably safe for him to remain. Upon the determination of these questions, the evidence of the promise of Barr, the superintendent, to give a longer space of time, is to be considered. Besides this, it must be assumed, and the actual evidence is, that Perkins, in giving the time which he did give, was obeying the orders of Barr, the superintendent, representing the defendant.

It was the duty of the defendant company as a part of this system, if it worked by any system, or if any system was adopted there by it according to which the work was to be performed, or as a part of the actual performance of the work in the quarry, to exercise reasonable care in order to give a reasonably sufficient time in order that the workmen could reasonably escape the dangers of the blast.

Perkins, in giving the signal of warning, was in the performance of the duty of the defendant; to him through the directions of Barr was delegated the performance of the duty of the master. In an ordinary sense he was a mere foreman and a co-servant, but under the direction of his master he was performing that master's duty, and the neglect was imputable to the master. His act in giving this signal was quite apart from the duties of the other workmen and was not an incident of co-service. This signaling was a duty which neither the plaintiff nor any other workman there in that quarry could perform, as a matter or service incident to the employment.

If negligence be established on the part of the defendant, contributing to the injury, it is not ground of nonsuit or for a direction of a verdict for the defendant, or a defence, that the negligence of a fellow-servant co-operated to produce the injury.

· The danger which existed was in the neglect to give reasonable opportunity to the plaintiff to reach a reasonably safe place. By the manner of conducting this work, or the system by which the quarry was being operated, the plaintiff was subjected to a risk not obvious or perceivable to him, or of which he could know anything by the exercise of his senses or ordinary care. His duty was at the rope, at the foot of the derrick, to keep it in hand, to keep his hand upon the rope and his eye upon the derrick, listen for the warning signal and to lower Kerr from the derrick.

He had the right to assume that his employer had exercised due care in furnishing him with reasonable opportunity to avoid the risk from the blast. *Chicago and Erie Railway Co.* v. *Branyan,* 37 *N. E. Rep.* 190 ; *Steamship Company* v. *Ingebregsten,* 28 *Vroom* 400.

The danger was not obvious, for he did not and could not observe but that reasonable time would be given. He could not know beforehand that the time would be too short and he could not discover it. It was a matter beyond his control or observation, and not an incidental risk, because it was a danger entirely secreted from his knowledge and beyond his knowledge and discovery, and only known by the master or one selected by the master to perform the duty of giving the warning.

Mr. Justice Dixon, in *Steamship Company* v. *Ingebregsten, supra,* after speaking of the rule of care required by the master, said : "Almost as unanimous are the authorities in favor of the proposition that if a master selects an agent to perform this duty for him and the agent fails to exercise reasonable care and skill in its performance, the master is responsible for the fault."

Whether the fault lie in the system which was adopted to perform the work in this quarry or in the actual conduct of it · would appear immaterial. As a part of these rested the duty on the master to exercise reasonable care to give a reasonably sufficient time for the plaintiff to reach a place of safety, as a part of the duty to provide a reasonably safe place for the

plaintiff to work in and to exercise reasonable care to maintain it as a reasonably safe place. If that duty was cast upon an employe the defendant was chargeable with the employe's fault. *Steamship Company* v. *Ingebregsten, supra,* and cases cited therein.

For cases in which similar accidents have happened and consequent liability, both in conduct of the work and because of the system from which accident arose, reference may be had to the cases of *Sword* v. *Cameron,* 1 *Dunl.* 493 ; *Bartonshill Coal Co.* v. *Reid,* 3 *Macq. H. L. Sc.* 266, 290 ; *Smith* v. *Baker* (1891), *App. Cas.* 325 ; 1 *Bev. Neg.* 747.

Neither upon the ground that no negligence had been established on the part of the defendant as the cause of the injury, nor upon the ground that the risks were such as were incidental or obvious, or such as the plaintiff should have discovered or known of in the exercise of ordinary care on his part, could a nonsuit have been directed. The trial court properly submitted these questions to the jury.

Another ground was, and still is, urged for nonsuit, and it is that the plaintiff was contributorily negligent—that is, that he did not at once upon the signal being given that a blast was to be fired, abandon Kerr and fly to a place of safety. It need only be said that it was his duty to his employer to lower Kerr to the ground. It was a part of his employment to do this upon the signal being given, and he had the right to assume that sufficient time would be given him to do it. I do not think under the circumstances that it could be called error of judgment in any sense. It was an act in the line of duty, and there was existing the most powerful incitement to perform it even in the face of danger. But in this case it was not for the trial judge on this point to determine that there existed a want of ordinary care. *Booth St. Railw.,* § 382 ; *Pennsylvania Railroad Co.* v. *Langendorf,* 48 *Ohio St.* 316 ; *Eckert* v. *Long Island Railroad Co.,* 43 *N. Y.* 502 ; *Donahoe* v. *Wabash, St. Louis and Pacific Railroad Co.,* 83 *Mo.* 560 ; *Linnehan* v. *Sampson,* 126 *Mass.* 506.

Another reason urged for a nonsuit is that the plaintiff was

guilty of contributory negligence because he sought refuge in the engine-house. The contention is that he should have stayed outside.

The facts show that he was deceived in his reliance upon a reasonable time being given him to fly to a place of safety, and he was confronted with imminent peril; with much more show of reason it could be contended, if he had stayed outside, that he should have sought refuge inside in the exercise of due care to avoid injury. I cannot perceive the reason of this contention. It is not even shown and it cannot be presumed that he would not have been stricken if he had stayed outside. It would appear to me as matter of fact he adopted the safer alternative. But if he had adopted the more dangerous one it would still remain for the jury under the circumstances to determine whether he was in the exercise of ordinary care.

The conclusion reached is that the learned trial judge properly refused to order a nonsuit.

There existed some dispute of the evidence of the plaintiff on the part of the defendant, but no different grounds appeared for a direction of a verdict for the defendant, and such direction was correctly refused.-

The answers of the court to the requests to charge as to the effect of the alleged promise of the superintendent to give a longer time between the signal and the explosion, and the charge of the court on that subject, have been examined, and no error is found against the plaintiff.

The requests to charge made at the conclusion of the evidence in the cause, what the court said in answer to them, and the charge of the court, have been examined, and so far as the assignments of error as presented in the argument and briefs of counsel are revealed, no erroneous submission by the court is discovered.

The judgment of the Circuit Court must be affirmed, with costs.