ELMER COMER, DEFENDANT IN ERROR, v. AARON MEYER ET AL., PLAINTIFFS IN ERROR.

Argued June 30, 1909—Decided November 15, 1909.

1. When the declaration in an action by a servant against his master for personal injuries by reason of the negligence of the master avers that the master set the servant to work with an instrumentality that the master had carelessly, negligently and improperly permitted and allowed to become defective and unsafe, and to so remain without proper repair and inspection, testimony that the master had promised the servant to repair or remedy the defect is admissible in evidence for the servant, although no averment of such promise is contained in the declaration.

2. A master is not liable under his promise to repair if the danger of injury to the servant from the defective appliance is so great or so imminent that a reasonably prudent person would not assume the risk. But whether the danger is of such character is for the jury when from the evidence opposite conclusions may be reasonably drawn.

3. Where the evidence tended to show that the king-bolt of a wagon broke, letting the whiffletree drop on the horse's heels, causing the horse to jump and run away, throwing out and injuring the plaintiff, the question whether the breaking of the bolt was the proximate cause of the injury was for the jury.

4. A master who personally receives a complaint from his servant as to a defect in the instrumentality furnished him by the master with which to work, and who personally investigates and promises to repair, is deemed to have waived a rule established by the master that reports of defects should be made to a designated agent.

On error to the Passaic Circuit Court.

For the plaintiffs in error, *Marshall Van Winkle.*

For the defendant in error, *Ward & McGinnis.*

The opinion of the court was delivered by

TRENCHARD, J. Elmer Comer, the plaintiff below, was employed by Meyer Brothers, the defendants below, as a driver. Meyer Brothers conduct, as partners, a department store in Paterson. The plaintiff was furnished with a horse and wagon by the person in charge of the defendants' stable. He drove to the store and loaded the wagon, and proceeded to deliver the defendants' goods. While driving along a slight rise on the Saddle River road, the king-bolt broke and the whiffletree dropped upon the horse's heels, causing it to jump forward and run away. The wagon was upset and plaintiff injured.

This suit was brought in the Passaic Circuit Court to recover damages for the injuries thus sustained.

The trial resulted in a verdict for the plaintiff, and this writ of error brings up for review the judgment entered upon such verdict.

The first proposition argued by the defendants is that "the negligence testified to at the trial was not alleged in the declaration, and that the declaration did not apprise the defendants of the case made against them at the trial."

The question presented is raised by assignments of error founded upon exceptions taken to the admission of evidence, and to the refusal of the trial judge to nonsuit the plaintiff and to direct a verdict for the defendants.

We do not perceive that the declaration failed to charge the negligence proven at the trial. It, in substance, charged that the defendants set the plaintiff to work as a driver upon "a wagon drawn by a horse attached thereto by a harness and shafts, on which shafts was a whiffletree fastened thereto by a bolt, which bolt the defendants had carelessly, negligently and improperly permitted and allowed to become worn, bent

and defective and unsafe, and to so remain without the proper repair and inspection." That thereafter, while the plaintiff was driving the horse and wagon the defective bolt "bent, broke, slipped or gave way, and caused the whiffletree to fall and the horse to run away and the plaintiff to be thrown to the ground," &c. The substance, therefore, of the negligence charged, was the furnishing of a wagon with a defective bolt.

The testimony at the trial tended to show that the bolt which held the whiffletree to the shaft was worn thin and defective, and that, as a direct result of its condition, the accident happened. .

The defendants' real contention is that the evidence of the promise of the master to remedy the defect in the bolt should have been excluded because the plaintiff did not set forth such promise in his declaration.

The plaintiff's proof tended to show that while the plaintiff was loading the wagon he noticed that the brace, running . from the top of the shaft and king-bolt down under the whiffletree to the lower end of the king-bolt, was cracked. Upon examining the cracked brace he also discovered that the king-bolt running through the shaft and the .whiffletree was badly torn and defective. It was this brace and the king-bolt which fastened the whiffletree to the shaft and held it in place. One of the defendants, Leopold Meyer, was at the time in charge of the loading of the wagon, in the absence of the shipping clerk. Comer reported the broken brace and the defective bolt to Meyer and called his attention to them. Meyer examined them and saw .their condition, but told Comer to go ahead as the wagon was now loaded, and to use the wagon with the broken brace and defective bolt to deliver the goods, and that he, Meyer, would have them fixed the next day. Comer, relying upon Meyer's promise, drove the wagon as directed. The accident happened on the day the promise to repair was made. It was such promise to repair that the defendants insist should have been set forth in the declaration.

We think not. It is the accepted law of this state that, under the contract of employment, it becomes the master's

duty to take reasonable care to furnish the servant suitable tools and implements with which he may work, and that the neglect of the master to perform this duty renders him liable to the servant for any injury sustained by reason of such neglect. *McDonald* v. *Standard Oil Co.,* 40 *Vroom* 445.

We have already pointed out that the negligence charged was the failure of the master to furnish a safe and suitable wagon for the use of the servant. That was the cause of action proved. The fact which appeared by the proof that the defect in the bolt was known to the servant and the risk therefore obvious, did not change the character of the master's omission, and render it non-negligent. It is true, that where it is shown that the servant either knew, or ought to have known, the dangerous character of the agency which he was called upon to use, and still voluntarily continued to use it, his action may be defeated; but that is upon the ground that what he assented to he cannot afterwards complain of as an injury. The fact that the plaintiff knew of the defect relieved the master from liability for his negligence only in case the servant assumed the risk arising out of the situation. But the servant does not always do this, even when the risks are obvious. He does not assume the risk from a defect of which he has complained, and which the master has promised to repair, during the interval fixed by the master. *Andrecsik* v. *New Jersey Tube Co.,* 44 *Vroom* 664.

Assumption of risk, like contributory negligence, is a defence, and need not be confessed and avoided in the declaration. *Belleville Stone Co.* v. *Mooney,* 31 *Vroom* 323; *New Jersey Express Co.* v. *Nichols,* 4 *Id.* 434; *Purcell* v. *Paterson Electric Co.,* 53 *Atl. Rep.* 235; *Warshawsky* v. *Raritan Traction Co.,* 39 *Vroom* 241.

If by promise to repair the assumption of risk was in fact negatived, the right of action still remained unimpaired on the original liability of the master for negligence in failing to use due care to have the instrumentality reasonably safe. *Belleville Stone Co.* v. *Mooney, supra.*

The right of recovery rests, not upon the promise to repair, but upon the master's negligence, and the fact that the appli-

cation of the principle expressed in the maxim *volenti non fit injuria* is negatived by the servant's reliance upon the promise. *Dunkerley* v. *Webendorfer Machine Co.,* 42 *Vroom* 60.

As was said by Mr. Justice Swayze in the case last cited:

"The difficulty with which the defendant contends is that there is negligence on its part, in the first instance, in failing to exercise reasonable care about the machine. For this negligence the defendant is liable unless it exculpates itself. It only exculpates itself when it shows that the plaintiff assumed the risk. * * * The master is not exculpated, however, unless the willingness of the servant to incur the risk is shown or reasonably inferred from the circumstances of the case. Such willingness is not shown, nor is it reasonably inferred from knowledge of the danger by the servant, where the other circumstances negative such inference. The circumstances that the servant complains, receives a promise of repair and continues to work in reliance upon the promise, negative the inference of willingness on his part to exempt the master from liability. By making the promise the master relieves the servant from the assumption of risk and remains liable for his negligence, notwithstanding the servant's knowledge."

With respect to the argument of the defendants which rests upon the assumption that the declaration avers that the plaintiff "did not know" of the defective bolt, it is sufficient to say that there is no such allegation in the declaration. The fair inference from the language to which the defendants point is that the plaintiff was not warned that he was to take the risk of hurt arising from the defective bolt. We conclude that the evidence as to the promise was properly admitted, and that the motion to nonsuit and direct a verdict upon the ground stated was properly denied.

The next contention of the defendants is that, granting that a promise to repair was made, the plaintiff was guilty of contributory negligence. The argument is that the plaintiff should have been nonsuited because of the rule that the master is not liable under his promise to repair if the danger of in-

jury from the defective appliance is so great or so imminent that a reasonably prudent person would not assume the risk. 26 *Cyc.* 1211; *Dowd* v. *Erie Railroad Co.,* 41 *Vroom* 451; *Dunkerley* v. *Webendorfer Machine Co., supra.*

But the trial judge recognized that rule and correctly stated it to the jury in his charge, leaving the jury to determine the character of the danger. Although the defect in the wagon was obvious, it was a fair question for the jury whether the risk of an accident was so great or imminent that no reasonably prudent person would have continued to work. *Dowd* v. *Erie Railroad Co., supra; Dunkerley* v. *Webendorfer Machine Co., supra.*

The evidence tended to show that both the defendants and the plaintiff thought the danger was not so great nor so imminent that the use of the wagon should be discontinued. The ground stated, therefore, did not justify a nonsuit.

The next contention of the defendants is that the breaking of the bolt was not the proximate cause of the plaintiff's injury. We see no merit in the contention. The proximate cause of an injury is the efficient cause, the one that necessarily sets the other causes in operation. *Batten* v. *Public Service Corporation of New Jersey,* 46 *Vroom* 857.

If the plaintiff's evidence was believed the bolt broke, letting the whiffletree drop on the horse's heels, and the horse then jumped and ran away injuring the plaintiff. Certainly there was thus presented a question for the jury whether the breaking of the bolt was the proximate cause of the injury.

Lastly, it is insisted that the plaintiff is precluded from recovery because it is said he violated a rule of the defendants' establishment that "anything out of order should be reported to the men in charge of the stables or to Mr. Gee." But the plaintiff reported the defect in question to the defendant personally. When the master acted upon the report, examined the instrumentality concerning which complaint was made, and promised repair, he waived the rule. 26 *Cyc.* 1161.

Finding no error, the judgment of the court below will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, GRAY, DILL, CONGDON, JJ.  13.

*For reversal*—VROOM, J.  1.