JOSEPH ZELLERS, PLAINTIFF IN ERROR, v. JOHN M. DELANY, DEFENDANT IN ERROR.

Argued July 1, 1910—Decided November 14, 1910.

1. The plaintiff, an engineer, in charge of a stationary Corliss engine, was, while oiling it, injured by a detached board, appurtenant to the premises, that suddenly fell into a fly-wheel, revolving by his side, and it was *held* that under the circumstances in evidence, recited in the following opinion, a judgment of nonsuit, based upon plaintiff's assumption of an obvious risk, was error.

2. Where the danger directly results from latent, extraneous conditions of the premises, unknown to the servant, he cannot be held to have voluntarily assumed the risks that arise from it, although the physical surroundings, which produced the danger, are visible and obvious to him.

3. It is the duty of the master to use reasonable care to maintain his premises in a safe condition for his servant to perform his work, and to cause them to be properly inspected at reasonable intervals of time in order to ascertain their condition as to such safety, and upon the trial of an issue of his negligence in these respects, evidence of his failure raises a question for the jury.

---

On error to the Essex Circuit Court.

For the plaintiff in error, *Beecher & Bedford.*

For the defendant in error, *Lindabury, Depue & Faulks.*

The opinion of the court was delivered by

VREDENBURGH, J. The plaintiff, while working under the defendant's employ in the capacity of an engineer having charge of a Corliss stationary engine (in the defendant's factory located at Newark, New Jersey, known as the Delany Spring Works), sustained permanent bodily injuries from the blow of a board which had fallen into the fly-wheel of the engine, and the present action, grounded upon charges of defendant's negligence in the premises, is brought to recover damages for such injury.

The plaintiff's proofs show the injury was inflicted immediately by a detached and partly-decayed board (four feet long, four inches wide and seven-eighths of an inch thick) which fell from a brick, or cement, pier or ledge, on which it had previously been fitted and rested, into the rim of a fly-wheel (revolving at the rate of one hundred and thirty revolutions per minute, seven feet in diameter with a twelve-inch rim) close to which the plaintiff was standing, and was, by it, driven or "shot" into his stomach. So great was the force of the blow that the edge of the board smashed to pieces a watch plaintiff carried in his overalls, perforated the walls of his abdomen, and literally disemboweled him.

The learned trial judge, at the conclusion of the plaintiff's proofs in deciding defendant's motion to nonsuit, conceded that the defendant had been remiss in failing to comply with the requirements of the Factory act of 1904 (*Pamph. L., p.* 152), expressing his view in these words: "I think the evidence clearly discloses that that revolving wheel could have been incased or inclosed, so that this man would not have been injured," but held, that, notwithstanding the statute, the plaintiff assumed all the risk incident to such condition, basing his construction of the act upon the recent decision of this court in the case of *Mika* v. *Passaic Print Works*, 47 *Vroom* 561, in which the court held, in an able opinion delivered by Judge Vroom, that this statute of 1904 did not abolish the common law principle of assumption of risk.

While not differing with the trial court as to the legal effect of the statute upon the common law principle of assumption

of risk, we disagree with it in its application of the principle
to the facts of the case at bar.    The judge, in deciding the
motion for nonsuit, further expressed himself as follows:
"Let us see whether or not, legally, this was an obvious risk.
I think it was, for this reason.    The risk, which was obvious,
was a rapidly-revolving fly-wheel.    The danger of physical
contact with it, by reason of its being unguarded, was an ob-
vious risk.    I see a fly-wheel revolving.    I know—nobody need
tell me; no expert or mechanic need tell me—that if I come
in physical contact with that wheel, directly or indirectly,
voluntarily or involuntarily, I will be injured.    I am not re-
quired to be possessed of the gift of prophecy to say just how,
in what manner, at what time, or upon what occasion I shall
be brought into contact with that wheel.    But if it is left un-
guarded, I take the risk, as I understand the law, of coming
in contact with that wheel in any way at all, directly, by com-
ing personally against it of my own volition, with no inter-
vening cause; by being drawn into it; or by something com-
ing from that wheel and injuring me.    That is, as I under-
stand it, the obvious risk."    I have quoted the remarks at
length so as to exhibit fully the reasons which governed his
decision.    It seems to us he fell into error in failing to make
the distinction pointed out in the decisions of this court upon
this subject.    For instance, in the case of *Burns* v. *Delaware
and Atlantic Telegraph Co.*, 41 *Vroom* 745, 752, Mr. Justice
Pitney, in delivering the opinion of this court, said:  "It is
not merely the physical surroundings of the servant that must
be obvious to him in order that he may be held to have as-
sumed the risks arising therefrom, but it must be obvious to
him, or, at least, to an ordinarily prudent servant, under the
circumstances, that there is danger in such a situation.
\*  \*  \*  But where the danger is unknown to the servant, he
cannot be held to have voluntarily assumed it, although the
physical surroundings that create the danger are known to
him.  And so the known absence of safeguards or precautions
cannot prevent a recovery where the *danger that renders them
necessary is unknown* to the injured servant."    Again, in a
later case of *Rogers* v. *Roe & Conover*, 45 *Id.* 615, 617, Chief

Justice Gummere, in his opinion delivered for this court, said: "It is not the obviousness of the physical condition or situation which charges the servant with the assumption of the risks that arise from it, but the obviousness of the danger which the physical condition or situation produces."

The fly-wheel in and of itself was harmless. Revolving steadily upon its axis, unless something extraneous, like the displaced board, fell into, or was caught up by it, the workman standing close to it was entirely safe from harm. It was the introduction into the wheel of the defective and negligently-fitted board, an event that could not reasonably have been anticipated by the plaintiff, which directly and immediately produced the injury to him.

But it is unnecessary to pursue this subject further here because in what follows hereafter upon the question of the defendant's negligence, the causal connection of the board with the accident will fully be shown. Looking over the evidence in the cause, we can discover no ground upon which the nonsuit can be sustained unless the evidence on the subject of the defendant's negligence was insufficient to carry the case to the jury.

The plaintiff's contention at the trial seems to have been of a twofold character—*first,* that the defendant was negligent in not having the fly-wheel protected in compliance with the requirements of the Factory act; *second,* that he was negligent in permitting this board to become loose, when it was apparently an appurtenant to the engine. The trial court disregarding the second contention, nonsuited the plaintiff on the ground above stated that, conceding the defendant had been remiss in failing to comply with the Factory act, nevertheless the plaintiff had assumed all risk incident to the unprotected condition of the fly-wheel. It seems to us the plaintiff's second contention was well taken, and that he was entitled to go to the jury upon that contention. The evidence shows that the plaintiff had been for a period of at least four months next prior to the accident employed by this defendant and actually engaged in the charge of the stationary engine. His particular duties were to keep up steam; see that the engine was in run-

ning order; oil it every hour, with the machinery running continuously. The defendant had so constructed the building where the engine was located and the plaintiff obliged to do his work, that he was confined within a space of three feet within which he was compelled to stand in order to oil the engine. On his right hand and close up to, and almost in contact with him, was the revolving fly-wheel. On his left hand, and almost touching him, was the side wall of the building. The fly-wheel revolved partly in a pit about twenty inches below the level of the floor. The evidence tends to show that the board had been previously fitted to, if not actually fastened upon, a brick pier or ledge near to and just above the pit in which the fly-wheel revolved. While there is no direct testimony showing precisely the manner in which the board became loosened or displaced, it was shown that it had been decayed in the middle and was broken at the ends. It is clear that after becoming loose and while the plaintiff was stepping near to, or upon one end of it, it suddenly fell down into the pit upon the rim of the fly-wheel. It was instantly caught up by the wheel and hurled against the plaintiff who was then pouring oil into the oil cup on the front of the engine. He thus details the accident: "My left hand was resting on the pillow block. * * * In the other hand I had a can of heavy oil I had mixed up with graphite. * * * I was standing there pouring this oil, and just as I kind of looked up a second to see what I was doing, why, I noticed this board shoot, and I couldn't get away before it hit me. After it hit me in the centre of my stomach, I knew I was hurt very bad." * * * "I was up against the piermint—the end of the piermint—and pouring oil when I happened to notice the board. Before I could do anything I noticed the board slide from this end and catch; the wheel brought it back against the shaft; hit me in the stomach, and threw me against the rim of the wheel, and the wheel threw me up against the window."

In November following the accident the plaintiff visited the engine room, and says, in his testimony, that he found the board detached and lying down in the corner back of the engine, and adds: "I found it decayed, with oil on it and broken

at the ends; decayed in the middle a little bit on the underneath side."

The evidence was clear and undisputed that no inspection of any kind had been made by the defendant, nor by anyone in his behalf, of these premises for a period of at least four months next prior to the accident. Proper inspection would, I think, have disclosed the fact that this board had become defective and was liable to slip or slide away from its position on the ledge into the fly-wheel.

The nearest link in the chain of causation of the plaintiff's injury was not the fly-wheel, but was this broken and defective board, and a reasonably thorough inspection would, I think, have disclosed its condition and menacing situation above the wheel. The proximate cause of an injury is the one that necessarily sets the other causes in operation. *Comer* v. *Meyer,* 49 *Vroom* 464.

It is argued in the brief of the defendant in error that there was nothing in the conditions that would lead a reasonable man to anticipate that within a period of four months a board would become rotten, &c., but this was a question, it seems to me, peculiarly appropriate for solution by a jury.

Whether or not four months was a reasonable time for inspection under the circumstances of the present case, was a question generally of fact for the jury. In *Furniture Company* v. *Board of Education,* 29 *Vroom* 646, it was held by this court that the question of reasonable time is generally for the jury, and always so when it rests upon conflicting inferences as to the mutual effect of the conduct of the parties to the transaction. In *Burr* v. *Adams Express Co.,* 42 *Id.* 263, it was held by the Supreme Court that the question what is reasonable time or opportunity when the facts are *in dispute,* or the inference *to be drawn from undisputed facts is in doubt,* is a question of fact and not of law. These decisions are cited with approval in the recent case decided in this court of *Timlan* v. *Dilworth,* 47 *Id.* 571, 572, in which the question arose as to what was reasonable time for making inspection of rented premises by the landlord, where the latter was charged with the duty of keeping a dumb-waiter in repair, which had fallen

because of some defect in the hoisting apparatus. The conclusion there reached was that what is a reasonable time when the facts are *disputed* and *different inferences cannot reasonably be drawn from the same facts,* is one of the questions of fact which, because they are for the court and not for the jury, are sometimes, though inaccurately, called questions of law. But whether the question, under the circumstances before us, was one of law, or of fact, in either case we think a nonsuit could not be supported.

The decisions of this court are in entire accord in holding that it is the duty of the master to use reasonable care to maintain his premises in a safe condition for his servant to perform his work, and to cause them to be properly inspected at reasonable intervals of time in order to ascertain their condition as to such safety, and, upon the trial of an issue of his negligence, his failure in these respects is a question for the jury to determine from the evidence. *Steamship Company* v. *Ingebregsten,* 28 *Vroom* 400; *Smith* v. *Erie Railroad Co.,* 38 *Id.* 636; *Hopwood* v. *Atha, &c.,* 39 *Id.* 707; *Dunne* v. *Jersey City G. Co.,* 44 *Id.* 586; *Reinhardt* v. *Central Lard Co.,* 45 *Id.* 9. And the servant is entitled to assume that his master has exercised due care and skill in furnishing proper appliances for his work and *in keeping them safe. Ibid.*

The judgment below should be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, CONGDON, JJ. 13.