CHARLES K. BENCKE AND INGEBORG BENCKE, RESPONDENTS, v. LEO WELTERSBACH, APPELLANT.

Submitted October 16, 1931—Decided February 5, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and CASE.

For the appellant, *Atwood C. Wolf.*

For the respondent, *I. Faerber Goldenhorn.*

The opinion of the court was delivered by

PARKER, J. This is a suit for malicious prosecution arising out of a complaint for grand larceny of certain drawings of machinery. The plaintiff recovered a verdict and judgment for $1,500. Defendant appeals and assigns twenty-one grounds of appeal, of which Numbers 1, 2, 3 and 12 allege error in refusing to nonsuit and to direct a verdict for defendant. The case

shows that there was a rule to show cause for a new trial, reserving exceptions generally, but the rule included as reason (b) that "the verdict in favor of the plaintiff Charles K. Bencke is against the evidence and against the weight of the evidence," and the rule discharging that rule to show cause recites this same reason as though argued in connection with another, that the verdict was excessive. It is of course settled that argument on weight of evidence in the trial court precludes consideration in the appellate court of refusals to take the case from the jury. From a typewritten paper annexed to one of the briefs of counsel we gather that they have undertaken to stipulate that "the said rule to show cause was addressed solely to the question of excessive damages," which is plainly not the fact; and that respondent "waives and abandons" the point that the questions raised on this appeal were raised on the rule to show cause. However, it is not for counsel to stipulate the appellate court into considering for the second time a matter of law raised by the rule to show cause. Hence we do not regard the points made by grounds 1, 2, 3 and 12 as properly before us. But if we are in error about this, it still appears that a claim for two weeks' salary was added by amendment, and was clearly for determination by the jury, so that a general motion to nonsuit or direct could not properly have been granted.

Five requests to charge were submitted by defendant: that is to say, they are entitled "request number 1," &c., but the first takes nearly two pages of the printed case, and the third takes fully two pages. All in all, they make up a rather complete charge from the standpoint of defendant, and the trial court was advised in writing that they are taken in large measure from a legal work on "Instructions to Juries." We have examined them, and think it sufficient to say that so far as an instruction on any point treated therein was requisite, the charge as delivered fully covered the requests. It may be well to say that there was no doubt whatever about the defendant having set in motion a criminal prosecution of the plaintiff, or about that prosecution having terminated favorably to him. Hence, it was unnecessary to instruct the

jury that those matters must be proved, they being admitted; and the court in charging properly laid stress on the elements of want of probable cause and malice. Where the requests deal with the questions of employment of plaintiff by defendant, and the right of a master to the product of the servant's work, they were also fully covered.

It appeared that defendant had consulted counsel before making a complaint, and the court instructed the jury in substance that if he had laid the case fully and fairly before counsel and acted on his advice, that would be a good and complete defense; but unless he told counsel the truth, and the whole truth, it would not. The argument now is that it appears without contradiction that the case was laid fully and truly before counsel. We have read defendant's testimony on this point, and all that appears is that defendant "asked for advice what to do, how to get the drawings back as I needed them * * * what I needed them for * * * that the drawings were my property * * * we had these checks with us [checks for plaintiff's wages] and we talked the thing very carefully over and he advised me to go and see the judge at the police court." It was at least for the jury to say whether the defendant had made the full disclosure required by the rule.

In discussing the elements of damage, the court alluded to the "humiliation" of plaintiff in being put under arrest, taken to the station house and put "in a cell, probably with common felons and common thieves," &c. It is urged that there is no evidence to support this comment. Plaintiff testified that he was arrested on a warrant for grand larceny, taken to the Oakland avenue police station, kept until ten-forty-five P. M., then transferred in the police wagon to the Montgomery street station and kept there till eleven A. M., the next day, when he gave bail. It is common knowledge that persons accused of and held for crime in a police station are put in cells for safe keeping. The "probability" that he was put with common thieves was a legitimate probability but not stated as a fact. The facts detailed by the court were: arrest; transport in the patrol wagon; confinement in a cell;

arraignment before a police judge. All these were fairly supported by the testimony.

Defendant produced two so-called expert witnesses prepared to testify, as we read the brief, that the retention by a discharged employe of drawings partly made for the employer and while under salary from him, was by an alleged custom of the profession, an "ethical" question and the court excluded that class of testimony.

This is alleged for error, but we cannot see that the ethics of the matter had any bearing on the issue. The court charged that defendant was in law entitled to the drawings in question and we think that charge was correct. The real question was, then, whether defendant was justified in setting in motion a complaint of grand larceny where plaintiff being lawfully in possession of the drawings, refused to give them up on demand.

The last point to consider is whether there was error in overruling the following question and striking out the answer:

"*Q.* Up to that time did you have any malice or hard feeling against Mr. Bencke? *A.* No." (Objected to as a conclusion. Objection sustained and answer struck out.)

"That time" was the time when he laid the case before counsel. Taken with the submission to counsel, the existence of ill feeling previously was important on the question of malice. Several other questions on the same line were also excluded, although on cross-examination the court allowed over objection of defendant's counsel a question whether he "thought plaintiff and his wife were thieves and crooks," saying: "It all goes to the state of his mind, whether he was actuated by demon (*sic*) and malice." The latter ruling was right, the former wrong. *Wigm. Ev.,* ¶ 581; *McKown* v. *Hunter,* 30 *N. Y.* 625.. See *Mulford* v. *Tunis,* 35 *N. J. L.* 256, 260. If a defendant in malicious prosecution may be cross-examined as to a state of mind indicating the presence of malice, he may by the same token be examined in chief as to the absence of it.

This error went to the root of the case and requires a reversal to the end that a *venire de novo* issue. Such will be the order.